# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT THE JANUARY TERM, 1869.

———————◆◆◆———————

## FISHER *vs.* THE STATE.

[INDICTMENT FOR BURGLARY.]

1. *Curtilage ; what will be held to be within.*—On an indictment for burglary, a smoke-house, the front part and door of which, is in the yard of the dwelling house, although the rear is not, being cut off by the fence of the yard, running up to the ends of the house, will be held to be within the curtilage.

2. *Same ; breaking into in rear, with feloneous intent.*—The breaking and entering of such a building, although it be in rear of it, will, if the intent be feloneous, be sufficient to make out.the offense, if the breach enables the prisoner to take out meat with his hands.

3. *Intent ; character of, what it will not be changed by.*—The character of the intent will not be changed by the fact, that the prisoner went into the smoke-house, on the business of the mistress of the house, before the time the offense is charged to have been committed, and while there dropped the meat, afterwards taken, down between the ceiling and weather-boarding of the house, so that it could be taken out, by prizing up one of the weather-boards ; nor will it change the character of the breaking and entering, so as to make the offense a mere larceny, instead of burglary.

From the Circuit Court of Perry.
Tried before the Hon. B. L. WHELAN.

THE indictment in this case charged that "Edward Fisher broke into and entered the smoke-house of Jefferson Watts, in which meat and salt. were at the time kept, for use or deposit, with intent to steal," against the peace, &c. At

2

the fall term, 1868, of the circuit court of Perry, the prisoner was tried, found guilty, and sentenced to the penitentiary for two years.   On the trial the defendant reserved the following bill of exceptions :  "The State introduced testimony that proved that the prisoner was in the employ of Jefferson Watts, in the county of Perry, in the State of Alabama, as a house servant and waiter ; that the wife of said Watts frequently gave the prisoner the smoke-house key, and directed him to go into the smoke-house and get out meat and other provisions.   It was also proven that the smoke-house was a framed building with weather-boards on the outside, and ceiling on the inside.   The ceiling extended from the floor, only six or eight feet high, towards the top.   Between the weather-boarding and the ceiling, were studding sufficiently large to allow a shoulder of meat to go down between the weather-boards and the ceiling. On one occasion, when the prisoner went into the smoke-house, by permission and direction of Mrs. Watts, to get out some provisions to be cooked for the family, the prisoner took three shoulders of meat and threw them between the ceiling and weather-borads.   Afterwards the prisoner prized open the bottom weather-board, at the lower edge, with a stick, and put his hand in, and took out three shoulders of meat, and sold them to a neighbor for four dollars and fifty cents.   The bottom weather-board was not broken, nor separated from the house, except at the lower edge, but hung by the upper nails.   The smoke-house was situated with front end in the yard of the dwelling, and the smoke-house door opened in said yard, the other end and two sides were in the garden, and in another lot.   The breaking and entry, as described, were committed on the side of the smoke-house which was in the garden, (the smoke-house being locked at the time,) in the year 1868, and in Perry county.   The said ceiling, of said smoke-house, rested on the floor, which ran out to the weather-boarding.   The ceiling was not broken.   This was all the evidence."

The prisoner asked the court to charge the jury :  1st. "That if the jury believe, from the testimony, that the front part of the smoke-house was in the yard of the dwell-

ing-house of the owner of the meat, and the door of the smoke-house opened in the yard of the dwelling, then, in law, the smoke-house was not a part of the dwelling-house, and the defendant is entitled to a verdict of acquittal, under this indictment."

2d. " If the jury believe, from the testimony, that the prisoner entered the smoke-house, by permission and direction of the wife of the owner, and threw the meat over between the ceiling and weather-boards, and afterwards loosed the bottom weather-board, and took the meat out, then they can not find him guilty of burglary."

3d. " If the jury believe the testimony in this case, then they can not find the defendant guilty."

The court refused to give all, or any of the charges asked, and the prisoner excepted, and now assigns as error, the refusal to give the charges asked by him.

W. B. Modawell, and J. B. Shivers, for prisoner.—The defendant is not guilty of burglary. If guilty of any crime, he is only guilty of larceny. When he entered the smoke-house and removed the meat, he entered by the permission of Mrs. Watts, wife of the owner. The entry, therefore, was lawful.

To constitute the crime of burglary, there must be a breaking and an entry, and both must be unlawful, and the hand, foot, or an instrument with which it is intended to commit the crime, must be introduced into the house. In this case there was nothing but a breach of the outside weather-boards; the ceiling was not touched. The security of the building was not violated.—See *The State v. McCall,* 4 Ala. 643 ; 1 Leach's C. L. 452 ; East's P. C. 491.

Joshua Morse, Attorney-General, *contra.*—1. The facts set out in the record establish a case of burglary. The statute defines burglary. Section 3695, Revised Code, defines it to be :

" Any person, who either in the night or day time, with intent to steal or commit a felony, breaks into and enters a dwelling-house or any building within the curtilage of a dwelling-house, though not forming a part thereof ; or into

any shop, warehouse *or other building*, in which any goods, merchandise, or other valuable thing is kept, &c."

This is the statutory definition of burglary, and this case falls directly within its meaning.

2. There is no error in the refusal to give the first charge, because the indictment charges that the offense was committed in a ' smoke house.' The evidence sustains this allegation literally. A smoke-house, under the facts in this case, is not a building within the curtilage. The proof shows that it was not within, and, therefore, is no part of the ' dwelling house.' It falls within the definition of ' other building' in which goods, &c., are kept."

3. There is no error in refusing the second charge, because, although the original entering might have been lawful, yet the proof shows that there was a second breaking and entry, and it was then that the felony was committed. The least entry with the hand or foot, or any instrument with *feloneous* intent, is sufficient.—*The State v. McCall*, 4 Ala. Rep., p. 463, and cases there cited.

4. The breaking and entering are both sufficient to constitute the offense.—*Donohoe v. The State*, 36 Ala. Rep. 281 ; Russell on Crimes, 1, 188 ; Wharton's Criminal Law, § 1550 ; Bishop's Criminal Law, 1, § 190.

PECK, C. J.—There is no error in the refusal of the court to give the charges asked. We hold the smoke-house, on the evidence in this case, as a legal proposition, is within the curtilage, and the breaking and entering sufficient, as far as they are concerned, to make out the crime of burglary. The front and door of the building being in the yard of the dwelling house, fixes the character of the building, as within the curtilage, although the rear part thereof was not within the yard of the dwelling-house, and although the breaking was in that part of the building. Any breaking that was sufficient to enable the prisoner to take the meat out through the breach, with his hands, is a breaking sufficient, in such a case. The evidence of the intent shows it to have been feloneous, notwithstanding the meat was put between the ceiling and weather-boarding of the building, on a time when he went into it on the business of the

mistress of the house, and was then intrusted with the key of the building for that purpose.

We are satisfied with the conviction and judgment in the court below; they are, therefore, affirmed, at the cost of the appellant.